**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

In Re:                                                                      Bankruptcy No. 11-31048
                                                                            Chapter 7
Daylon Bakken,

                              Debtor.
_____/
Daylon Bakken,

                              Plaintiff,

            vs.                                                             Adversary No. 12-07038

Alaska Commission on Postsecondary Education
(ACPE), U.S. Department of Education and
Sallie Mae,

                              Defendants.
_____/

**MEMORANDUM AND ORDER**

**I.  INTRODUCTION**

        Debtor/Plaintiff Daylon Bakken petitioned for relief under Chapter 7 of the

Bankruptcy Code on October 30, 2011.  The Court granted Bakken a bankruptcy

discharge on March 20, 2012.

        On September 24, 2012, Bakken filed this adversary proceeding seeking a

determination that his student loan debt with the Alaska Commission on Postsecondary

Education (ACPE), the United States Department of Education (ED) and Sallie Mae is

dischargeable under 11 U.S.C. § 523(a)(8).  ACPE, ED and Sallie Mae filed answers,

denying that Bakken is entitled to the relief he seeks.

On September 4, 2013, ACPE, ED and Sallie Mae filed a joint Motion for Summary Judgment, arguing there is an absence of evidence supporting Bakken's request for the discharge of his student loan debt.  Bakken, who has appeared pro se in this matter since his attorney was granted permission to withdraw on May 17, 2013, did not file a response to the Motion for Summary Judgment.  The Court held an evidentiary hearing on October 30, 2013, and took the matter under advisement.[1]  For the reasons provided below, the Court finds that Bakken offered testimony sufficient to create a question of material fact regarding whether his student loan debt is an undue burden under 11 U.S.C. § 523(a)(8).  Therefore, Defendants' Motion for Summary Judgment is DENIED.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial responsibility of identifying pleadings, discovery, testimony and other evidence which it believes demonstrate "the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 324.  The moving party satisfies this burden by showing "an absence of evidence to support the nonmoving party's case."  Id. at 325.  When the moving party has met its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

---

[1] Although the Court recognizes it is unusual to hold an evidentiary hearing on a motion for summary judgment, Bakken was pro se at the time Defendants filed their Motion for Summary Judgment, remained pro se during the time to file a response and appeared pro se at the evidentiary hearing.

2

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citing Fed. R. Civ. P. 56). The Court views the record in the light most favorable to the nonmoving party and must afford that party all reasonable inferences. Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

## III. FINDINGS OF FACT

Viewing the record in the light most favorable to Bakken and affording him all reasonable inferences, the Court makes the following findings of fact:

### A. Health History

1) At the time of the hearing on the Motion for Summary Judgment, Bakken was 36 years old.

2) In response to Sallie Mae's First Set of Requests for Admissions, Bakken admitted he had "no medical, physical or mental disability or illness" that would affect his ability to repay his student loans. He also admitted that he was "under no medical or physical limitations" with respect to his work status or driving privileges. At the hearing on the Motion for Summary Judgment, Bakken claimed this status might change. He is currently "under the care of a psychologist" and has been meeting with a psychologist for approximately 14 weeks. Bakken believes there is a 90 percent chance his condition will eventually force him to leave his current employment. He did not offer any documentation of his treatment or evidence of a diagnosis. He did not offer any evidence regarding the cost of this treatment.

3

**B. Post-Secondary Education**

3)    Bakken attended Letourneau University in Longview, Texas, from July or
August 2001 through May 2005, earning a Bachelor of Science degree,
magna cum laude, in Aeronautical Science.

4)    Bakken attended Oak Hills Christian College in Bemidji, Minnesota, from
July or August 1997 through May 1998, earning a Bible Certificate.

**C. Employment and Earnings**

5)    The Department of Homeland Security (DHS) has employed Bakken as an
Air Interdiction Agent since August 2009.

6)    Bakken earned a series of promotions and wage increases since joining
DHS, starting at a GS-11, Step 1, earning $56,411.00 per year in August
2009, and progressing to a GS-13, Step 2, earning $105,620.40 per year by
September 2012.

7)    Bakken completed the service requirements for career tenure with the
federal government.

8)    Bakken qualifies for federal retirement benefits as a law enforcement officer.

9)    DHS awarded Bakken at least three performance-based cash awards:

a)    $500 on December 5, 2010;
b)    $500 on November 6, 2011; and
c)    $750 on December 2, 2012.

10)   Bakken listed $7,698.00 as his monthly gross wages and $3,240.78 as his
total net monthly take home pay on Schedule I to his bankruptcy petition,
which he filed on November 21, 2011.  Deductions from his monthly gross
wages included the following:

4

|    |           |                                |
|----|-----------|--------------------------------|
| a) | $873.73   | Payroll Taxes and Social Security |
| b) | $95.19    | Retirement                     |
| c) | $389.48   | TSP-FERS                       |
| d) | $29.93    | FEGLI                          |
| e) | $270.77   | FEHBA                          |
| f) | $97.42    | Dental Plan                    |
| g) | $32.73    | Vision Plan                    |
| h) | $0.60     | Opt Fegli                      |
| i) | $2,667.37 | Child Support/Spousal Support  |

11)   According to Bakken's 2012 W-2 form, his gross income for 2012 was

$100,874.69.  Bakken's 2012 Form 1040 reflects "wages, salaries, tips, etc."

for 2012 totaling $93,674.89 and adjusted gross income totaling $88,875.00.

12)   Before joining DHS, Bakken held the following positions:

a)  Corporate Co-pilot, Marvin Windows and Doors, Warroad, MN,
February 2008 – August 2009 (Bakken left his job with Marvin
Windows to accept a higher-paying job with DHS);
b)  Fire Patrol/Detection Pilot, Bear Aviation, Baudette, MN, April
2008 – July 2008;
c)  Pilot, Grafe Auction, Spring Valley, MN, June 2007 – February
2008;
d)  Pilot/Customer Service Tech., Concepts and Designs, Owatonna,
MN, September 2005 – October 2007; and
e)  Pipeline Patrol Pilot/Mechanic, Gregg Flying Service, TX, October
2004 – July 2005.

13)   Bakken's "taxed social security and Medicare earnings" totaled $89,356.00

in 2011, $72,808.00 in 2010, $49,083.00 in 2009, $37,542.00 in 2008,

$47,173.00 in 2007 and $55,857.00 in 2006.  At the summary judgment

hearing, Bakken testified that he is currently near the maximum earning

capacity in his industry.  If he leaves law enforcement, Bakken believes his

income will decrease.

**D. Student Loan Debt**

14)   On May 31, 2009, Bakken executed a master promissory note to secure a

William D. Ford Direct Consolidation Loan (Consolidation Loan) from ED.

ED disbursed $21,234.15 (unsubsidized) and $18,381.37 (subsidized) on or about July 17, 2009, at 3.125 percent interest per annum.

15) Bakken elected to repay his Consolidation Loan under the Income Based Repayment Plan (IBRP).  Based on Bakken's income and other factors, Direct Loans set Bakken's monthly payment at $0.00.  When Bakken re-certified for the IBRP in September 2011, Direct Loans recalculated his monthly payment as $386.90 beginning October 21, 2011.

16) As of October 4, 2012, Bakken owed $42,300.75 in student loan debt to ED, including $42,142.11 in principal and $158.64 in interest, with interest accruing on the principal at the rate of $3.61 per day.

17) Bakken is eligible for a minimum of 35 months of economic deferments and forbearance on his Consolidation Loan.

18) Bakken qualifies for and has participated in the Direct Loans' Public Service Loan Forgiveness (PSLF) program with ED.  Bakken qualifies for forgiveness of the balance remaining on his Consolidation Loan after 120 on-time, full, scheduled, monthly payments.  The 120 payments must be made under the ICRP, Income Contingent Repayment Plan, Standard Repayment Plan with a ten-year repayment period, or any other Direct Loan Program Repayment Plan, provided the payments are at least equal to the monthly payment required under the Standard Repayment Plan with a ten-year repayment period.  As of August 2013, Bakken had made 24 payments that qualify toward PSLF.

19) Between 2001 and 2005, Bakken received four state student loans totaling $34,000 from ACPE to attend Letourneau University. The four promissory notes evidenced student loans made to Bakken under a program funded in whole or in part by a governmental unit within the meaning of 11 U.S.C. § 523(a)(8). In June 2009, Bakken consolidated the four loans into one loan, totaling $31,898.02 plus interest at 5.9 percent per annum. This loan has been designated CL00 01.

20) As of October 6, 2012, Bakken owed ACPE $31,360.18 in student loan debt, which includes principal of $29,180.49 and interest of $1,979.69. Interest continues to accrue on the principal balance at the rate of $4.74 per day.

21) For the consolidated loan (CL00 01), the first payment of $267.45 was due on July 15, 2009. ACPE offered a Temporary Reduced Payment of $166.00 for six months (9/15/2009 – 2/15/2010) and Bakken accepted this offer on August 6, 2009. The minimum monthly payment then increased to $273.24 on March 15, 2010, and has not changed since 2010.

22) As of October 11, 2012, Bakken owed $64,206.92 in student loan debt to Sallie Mae arising from six educational loans. Bakken testified that Sallie Mae initially disbursed eight educational loans to him between September 10, 2002, and June 28, 2005. Between 2002 and 2005, Bakken paid off two of the eight loans, leaving six remaining educational loans outstanding. The total outstanding educational loan debt owed by Bakken to Sallie Mae includes $60,972.11 in outstanding principal, $2,994.81 in accrued interest

7

and $240.00 in late fees.  Bakken incurred his indebtedness to Sallie Mae to
pay the cost of attending Letourneau University.

23) On or around November 24, 2008, Bakken entered into a four-year interest-
only repayment plan with Sallie Mae requiring monthly payments of
$284.25.  At the time this adversary proceeding was filed, the payments
required of Bakken to service his student loan debt owed to Sallie Mae
totaled $284.25.

24) Schedule E of Bakken's bankruptcy schedules lists $20,200.00 in
unsecured priority claims (court-ordered reimbursement of ex-spouse's
attorney fees), and Schedule F lists $165,665.68 in unsecured nonpriority
claims, which includes $129,970.00 in student loan debt.  The student loan
debt represents 69.93 percent of Bakken's total unsecured debt.  The
student loan debt represents 78.45 percent of Bakken's unsecured,
nonpriority debt.

25) Bakken testified during the hearing he made efforts to stay current on his
student loan debt and attempted to remain in contact with the lenders.  He
offered more than 100 pages of documentation in support of this testimony.

**E.  Alternative Repayment Plans**

26) Bakken qualifies for five different repayment plans from ED:

|    | Repayment Plan | Term (in Months) | Initial Monthly Payments | Total Payments (Interest + Principal) |
|----|----------------|------------------|--------------------------|----------------------------------------|
| 1. | Standard | 120 | $415.74 | $49,888.80 |
| 2. | Extended – Fixed | 300 | $205.81 | $61,743.00 |
| 3. | Extended – Graduated | 300 | $111.61 | $67,346.08 |
| 4. | Graduated | 120 | $267.20 | $51,211.09 |
| 5. | Income Contingent | 114 | $419.21 | $49,614.45 |

8

27) On December 5, 2012, ACPE offered to reduce the amount Bakken needed to repay to $15,625.00, repaying in monthly installments of $125 for 125 months with no interest accrual.  Upon payment of the $15,625.00, ACPE agreed to write off any remaining unpaid portion of the student loan debt. ACPE represented that this offer was still available to Bakken at the time of the hearing.

28) On January 22, 2013, Sallie Mae offered to reduce Bakken's principal balance to $60,000.00, reduce and fix the interest rate on all six loans at three percent and extend a 25-year self-amortizing repayment term resulting in monthly payments due of $284.53.  Based on representations from counsel, it is not clear whether this offer is still available.

**F. Family Obligations**

29) Bakken is a divorced father of six children.  His ex-wife, Kristi Bakken, and six children, ages 14, 12, 10, 8, 5 and 4, currently live in Hudson, Wisconsin.

30) Bakken and Ms. Bakken separated in July 2010.  The divorce was finalized May 2, 2011.

31) Ms. Bakken has sole legal custody and primary physical placement of the minor children.

32) The divorce decree permits Bakken to have supervised visitation with his children once per week for two hours per week.  Bakken pays $50 per visitation session.

9

33) At the hearing, Bakken testified his children are required to participate in weekly reunification therapy.  Bakken pays for half of the children's reunification therapy.  His portion of the expense is $75 per hour, and he plans to make this payment weekly.

34) Bakken testified his children are also required to participate in weekly counseling.  He stated that he will pay $25 per child per week for counseling.

35) The divorce decree requires Bakken "to participate in and fully complete an anger management program and a domestic violence program."  He offered no evidence about the cost of this program.

36) During his deposition on February 28, 2013, Bakken testified that he had not visited his children in person since the summer of 2012 or possibly earlier.  Bakken was uncertain if he visited his children more than once since 2011.

37) At the hearing on the Motion for Summary Judgment, Bakken testified he has seen only one of his children in the past three years.  He is currently attempting to reunite with them and plans to pursue court action in Wisconsin for custody and placement of his children.

38) Bakken explained at the hearing that his oldest son is in foster care and that St. Croix County, Wisconsin, designated two of his daughters as being "children in need of protective services."

39) Bakken believes he will incur attorney's fees while attempting to regain custody of his children.  He testified at the hearing that he contacted an attorney, and the attorney requested a $5,000 retainer.  Bakken has not yet

retained an attorney.  He is unsure what his monthly expense for attorney's fees will be.  He testified that he is uncertain about the future:  he does not know if he can afford an attorney or if he "just needs to not pursue [his] kids."  He further explained that he has been told by social workers and his psychologist that he should retain an attorney.

40) Bakken also suggested he will incur additional expenses to travel to see his children and to travel to the psychologist who provides him counseling services.  He offered neither documentation of these expenses nor an estimate of them.

41) Bakken is obligated to pay Ms. Bakken $2,200 per month in child support until June 1, 2017, after which time the payment is set to decrease as each of his children reaches the age of 18 or is emancipated.

42) Bakken testified at the hearing that any child support arrears could negatively affect his pilot's license and driver's license, possibly resulting in their suspension or revocation.

43) Bakken is obligated to maintain his children on his medical insurance policy and must pay one-half of his children's uninsured hospital, medical, dental and related expenses.  He testified the amount he must pay fluctuates.

44) Bakken is obligated to pay Ms. Bakken $400 per month in spousal maintenance until June 1, 2016, or earlier, upon the death of either party or the remarriage of Ms. Bakken.

**G. Bakken's Scheduled Expenses and Adjusted Expenses**

45) Bakken listed $3,226.76 in average monthly expenses on his Schedule J:

11

| 1. | Rent or home mortgage payment | | | 789.43 |
|---|---|---|---|---|
| 2. | Utilities: | a. Electricity and heating fuel | | 365.00 |
| | | b. Water and sewer | | 30.00 |
| | | d. Other Refuse Disposal | | 40.00 |
| 3. | Home maintenance | | | 95.00 |
| 4. | Food | | | 320.00 |
| 5. | Clothing | | | 50.00 |
| 6. | Laundry and dry cleaning | | | 40.00 |
| 7. | Medical and dental expenses | | | 50.00 |
| 8. | Transportation (not including car payments) | | | 360.00 |
| 9. | Recreation, clubs and entertainment, newspapers, | | | 25.00 |
| 10. | Charitable contributions | | | 100.00 |
| 11. | Insurance | d. Auto | | 70.00 |
| 12. | Installment payments | a. Auto | | 464.00 |
| | b. Other | Teresa Baier (By Court Order, For Guardian Ad Litem Fees) | | 100.00 |
| | | Kristi Bakken (By Court Order, For Attorney's Fees) | | 83.33 |
| 17. | Other: | Personal Care and Hygiene | 20.00 | |
| | | Hair Cuts | 20.00 | |
| | | Household supplies | 10.00 | |
| | | Pet Expenses | 15.00 | |
| | | Uninsured Medical Expenses For Non-Custodial Children | 180.00 | 245.00 |
| 18. | AVERAGE MONTHLY EXPENSES | | | $3,226.76 |

(Bankr. No. 11-31048, CM/ECF Doc. 7, Schedule J.)

46)   From September 2009 to September 2012, Bakken resided in a house located at 178 32nd Street, Northwood, North Dakota 58267. Bakken sold this house on August 31, 2012, netting $2,977.44 from the sale.

47)   Bakken lived alone in a two-bedroom apartment in Larimore, North Dakota, until August 15, 2013. His rent payment for the apartment in Larimore was $450 per month, which included water, sewer and garbage expenses.

48)   Bakken testified at his deposition that the electricity and heating expenses at his Larimore apartment were approximately $100 per month.

49) Bakken testified that he reduced his home maintenance expenses to
approximately $25 per month when he moved into the Larimore apartment.

50) Bakken's obligation to pay rent, utilities and expenses for the Larimore
apartment ceased when he vacated the apartment on August 15, 2013.

51) On August 15, 2013, Bakken moved to Farmington, Minnesota, and lives in
a two-bedroom apartment with a roommate.  Bakken pays $100 per week in
rent for the Farmington apartment and is currently not responsible for paying
utilities.  He testified at the hearing that his rent was set to increase at the
end of October to as much as $700.  Bakken did not clarify whether he
meant $700 per month or $700 per week.  It is also not clear whether "$700"
includes utilities.

52) Bakken described his move to Farmington as temporary.  He explained
DHS temporarily assigned him to the Farmington office, so he has the
opportunity to resolve familial issues.  He referred to the temporary
assignment as a "six-month TDY."  Bakken remains employed with the
Grand Forks, North Dakota, office.  He does not receive per diem
allowances while in Farmington.

53) Bakken pays $456 per month toward a loan secured by a 2011 Subaru
Outback.  At the hearing, Bakken clarified that he did not purchase a new
vehicle at the same time he petitioned for bankruptcy relief.  The loan
originated with the purchase of a 2010 Subaru, which was totaled.  The
2011 model was a replacement vehicle.  Bakken estimates he will pay off
this car loan in approximately February 2017.  He anticipates, however, that

he will incur maintenance and repair expenses and, therefore, will not realize a savings after the car loan is paid in full.

54) Teresa Baier forgave the debt Bakken owed her for guardian ad litem fees. He is no longer required to pay her $100 per month.

55) Bakken no longer has pet expenses of $15.00 per month.

## H. Lifestyle Expenses

56) Bakken's Larimore apartment lease began in April 2012. He did not start living in the apartment until August 2012, after his house sold. Bakken testified at his deposition that he began leasing in April 2012 because he did not know when another apartment would become available in his chosen building. He paid $430 per month for the Larimore apartment lease while he was not living there.

57) Bakken contributes seven percent of his income to his United States government sponsored Thrift Savings Plan (TSP). This equals $283.58 per two-week pay period, or approximately $567.16 per month.

58) Bakken donated approximately $100 per week to his church, New Testament Baptist Church (NTBC) in Larimore, North Dakota, until August 15, 2013. He listed a $100 per month contribution to NTBC on his Schedule J. Since moving to Farmington in August 2013, Bakken stopped donating to NTBC. He is not yet attending a church in Farmington.

59) For a period of approximately four months in 2012, Bakken voluntarily provided a boy from his church with room and board in his Larimore, North

14

Dakota, apartment.  He also provided the boy with new clothes.  He has not provided the boy with support since August 2013.

60) Bakken donated an additional $65 per month to the boy's family to help them send him to a school in Missouri.  Bakken did not include this expense on his Schedule J.  Bakken stopped donating to this family in August 2013.

61) In approximately November 2012, Bakken purchased an iPhone.  He has a Verizon plan including voice calls and data.  Initially, Bakken spent $110 per month on his plan.  He estimates his current monthly expense is approximately $125 per month because he increased the amount of data usage available.

62) In approximately November 2012, Bakken signed up for a home internet package costing approximately $60 per month.  Bakken used this service until August 15, 2013, when he vacated the Larimore apartment.  He does not currently have a home internet package.

63) Bakken's 2012 tax refund was $9,483.00.

64) Using his tax refund, on February 19, 2013, Bakken purchased $2,081.35 worth of goods from the Apple Store.  The items purchased included the following:

    a)   MacBook Pro Laptop:  $1,599.00
    b)   AppleCare Protection Plan for MacBook Air:  $183.00
    c)   Epson All-in-One Printer (Print/Copy/Scan/Fax):  $129.95
    d)   Apple USB Superdrive:  $79.00

65) Using his tax refund, Bakken also purchased new tires and paid Ms. Bakken $1,500.00 that he owed for her attorney's fees.  As of the date of his deposition, Bakken had $5,000.00 left from his tax refund.

66)   The following are examples of other miscellaneous consumer goods and services Bakken purchased during a six-month period between August 2012 and January 2013:

| | Retailer | Date | Cost | Item/Description | Citation |
|---|---|---|---|---|---|
| 1. | Lands' End | 8/23/12 | $51.89 | Clothing for self and unrelated boy living with Bakken | Exh. 20, Check. Acct. State., PLNT000708; Exh. 1, Bakken Dep. 144:12-145:3 |
| 2. | Lands' End | 8/24/12 | $251.13 | Clothing for self/unrelated boy living with Bakken | Exh. 20, Check. Acct. State., PLNT000708; Exh. 1, Bakken Dep. 144:12-145:3 |
| 3. | Grand Forks Air Force Base, Building 102 | 9/6/12 | $92.65 | Rental of fishing boat, rototiller, or snowblower | Exh. 20, Check. Acct. State., PLNT000711; Exh. 1, Bakken Dep. 140:15-141:3 |
| 4. | Hilton Hotel | 9/21/12 | $106.13 | Hotel in Fargo for scuba diving trip | Exh. 20, Check. Acct. State., PLNT000713; Exh. 1, Bakken Dep. 142:5-142:23 |
| 5. | Osaka Sushi | 9/24/12 | $118.07 | Group meal | Exh. 20, Check. Acct. State., PLNT000713; Exh. 1, Bakken Dep. 142:24-143:9 |
| 6. | Qwest Communications | 10/10/12 | $134.93 | Internet set up | Exh. 20, Check. Acct. State., PLNT000716; Exh. 1, Bakken Dep. 139:22-24 |
| 7. | Amazing Grains | 11/5/12 | $52.81 | Specialty organic groceries | Exh. 20, Check. Acct. State., PLNT000721; Bakken Dep. 135:7-19 |
| 8. | Verizon Wireless | 11/6/12 | $156.89 | Initial bill | Exh. 20, Check. Acct. State., PLNT000721; Exh. 1, Bakken Dep. 136:11-14 |
| 9. | Bed Bath & Beyond | 11/7/12 | $62.33 | Candles | Exh. 20, Check. Acct. State., PLNT000721; Exh. 1, Bakken Dep. 136:15-17 |
| 10. | Cellular Communication | 11/8/12 | $85.39 | Unknown | Exh. 20, Check. Acct. State., PLNT000722; Exh. 1, Bakken Dep. 136:20-22 |
| 11. | Nature's Country Store | 11/14/12 | $83.21 | Vitamins, diet and fitness products | Exh. 20, Check. Acct. State., PLNT000722 |
| 12. | Toms.com | 12/17/12 | $95.22 | Shoes for self/friend | Exh. 20, Check. Acct. State., PLNT000856; |

| | Retailer | Date | Cost | Item/Description | Citation |
|---|---|---|---|---|---|
| | | | | | Exh. 1, Bakken Dep. 131:2-7 |
| 13. | Amazon | 12/19/12 | $109.82 | ERGObaby Baby Carrier; AEROBIE PRO RING | Exh. 20, Check. Acct. State., PLNT000857; Exh. 21, Amazon, PLNT00909 |
| 14. | Aleva Stores | 12/19/12 | $56.16 | Nutrition supplements | Exh. 20, Check. Acct. State., PLNT000856-57; Exh. 1, Bakken Dep. 132:9-14 |
| 15. | Toms.com | 12/21/12 | $108.79 | Shoes for self/friend | Exh. 20, Check. Acct. State., PLNT000857; Exh. 1, Bakken Dep. 132:21-133:16 |
| 16. | C&R Cleaners | 12/31/12 | $57.60 | Dry cleaning for comforter; ironing for shirts | Exh. 20, Check. Acct. State., PLNT000861; Exh. 1, Bakken Dep. 116:2-21 |
| 17. | Cabela's | 12/31/12 | $116 | Fishing licenses for two; fishing equipment | Exh. 20, Check. Acct. State., PLNT000861; Exh. 1, Bakken Dep. 120:19-121:15 |
| 18. | Lakeview Restaurant, Warroad | 1/3/12 | $37.16 | Meal for two | Exh. 20, Check. Acct. State., PLNT000861; Exh. 1, Bakken Dep. 121:16-24 |
| 19. | Amazon | 1/9/13 | $36.49 | Organic Hemp Protein Hi Fiber; Organic Hemp Oil | Exh. 21, Amazon, PLNT00906 |
| 20. | Amazon | 1/9/13 | $76.73 | Vibrant Health Rainbow Vibrance, Full Spectrum Superfood; Vibrant Health Green Vibrance Family Size | Exh. 21, Amazon, PLNT00907 |
| 21. | Amazon | 1/10/13 | $54.69 | Amazing Grass Amazing Trio Powder (Alfalfa, Barley, Wheat Grass) | Exh. 21, Amazon, PLNT00908 |
| 22. | The AIM Companies | 1/10/13 | $156.95 | Nutrition supplements (e.g. "barley grains, carrot and beet juices, leaf greens") | Exh. 20, Check. Acct. State., PLNT000862; Exh. 1, Bakken Dep. 123:14-22 |
| 23. | Amazon | 1/11/13 | $41.45 | Sweet Carrot Juice Powder w/ Probiotics; Apple Cider Vinegar | Exh. 21, Amazon, PLNT00905 |
| 24. | Sweet Maria's Coffee | 1/15/13 | $90.18 | Green coffee beans ("I buy green beans from them and just roast them at home.") | Exh. 20, Check. Acct. State., PLNT000863; Exh. 1, Bakken Dep. 126:16-22 |

| | Retailer | Date | Cost | Item/Description | Citation |
|---|---|---|---|---|---|
| 25. | Amazon | 1/18/13 | $79.00 | Prime Membership | Exh. 20, Check. Acct. State., PLNT000863; Exh. 1, Bakken Dep. 127:4-7 |

67)  Bakken participated in financial counseling at the Village Family Service Center after the Court granted him a bankruptcy discharge.  According to the case action plan created during Bakken's credit counseling, Bakken's monthly income exceeds his monthly expenses by $7.09 after deducting expenses based upon a "minimal standard of living."  Bakken based this figure on monthly take home pay of $3,033.00 and monthly expenses of $3,025.91.  See Village Case Action Plan, SMFS-00065-72.  Bakken indicated he is willing to lower his expenses if necessary.  The monthly expenses Bakken deducted do not include student loan payments or visitation, reunification therapy and counseling fees.

68)  At the hearing, Bakken testified he must pay all his bills with the income he earns because he has no one on whom he may rely for support.  He explained that his father, who offered financial help to Bakken in the past, is now disabled and unable to lend him financial support.

## IV. CONCLUSIONS OF LAW

### A.  Student Loan Dischargeability Standards

Section 523(a)(8) of the Bankruptcy Code provides that debts arising from certain educational loans or benefits may not be discharged unless "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. § 523(a)(8).  Unlike many other debts, a debtor's obligation to pay a student loan debt remains until there has been an express determination that the

18

loan is dischargeable.  In other words, the exception from discharge under section

523(a)(8) is self-executing in that the discharge order will not include a student loan

debt unless debtor affirmatively secures a hardship determination.  <u>Hangsleben v. U.S.</u>

<u>Dep't of Educ.</u> (<u>In re Hangsleben</u>), Adv. No. 10-7018, 2011 WL 2413340, at *6 (Bankr.

D.N.D. June 10, 2011) (citation omitted).

 The debtor carries the burden of establishing undue hardship by a

preponderance of the evidence.  <u>Walker v. Sallie Mae Servicing Corp.</u> (<u>In re Walker</u>),

650 F.3d 1227, 1230 (8th Cir. 2011).  "The burden is rigorous.  'Simply put, if the

debtor's reasonable future financial resources will sufficiently cover payment of the

student loan debt—while still allowing for a minimal standard of living—then the debt

should not be discharged.'"  <u>Educ. Credit Mgmt. Corp. v. Jesperson</u>, 571 F.3d 775, 779

(8th Cir. 2009) (quoting <u>Long v. Educ. Credit Mgmt. Corp.</u> (<u>In re Long</u>), 322 F.3d 549,

553 (8th Cir. 2003)).  In assessing whether a debtor has met his or her burden of

proving undue hardship, courts in the Eighth Circuit apply a totality of circumstances

test, under which they consider:  "(1) the debtor's past, present, and reasonably reliable

future financial resources; (2) a calculation of the reasonable living expenses of the

debtor and her dependents; and (3) any other relevant facts and circumstances

surrounding the particular bankruptcy case."  <u>In re Walker</u>, 650 F.3d at 1230 (citing <u>In re</u>

<u>Long</u>, 322 F.3d at 554).

 Bankruptcy courts in the Eighth Circuit have considered a number of factors in

analyzing the third prong of the totality of the circumstances inquiry, including:

 (1) Total present and future incapacity to pay debts for reasons not

   within the control of the debtor;

(2)    Whether the debtor has made a good faith effort to negotiate a

deferment or forbearance of payment;

(3)    Whether the hardship will be long-term;

(4)    Whether the debtor has made payments on the student loan;

(5)    Whether there is permanent or long-term disability of the debtor;

(6)    The ability of the debtor to obtain gainful employment in the area of

study;

(7)    Whether the debtor has made a good faith effort to maximize

income and minimize expenses;

(8)    Whether the dominant purpose of the bankruptcy petition was to

discharge the student loans; and

(9)    The ratio of student loan debt to total indebtedness.

In re Hangsleben, 2011 WL 2413340, at *6 (citations omitted); Groves v. Citibank NA (In

re Groves), 398 B.R. 673, 683 n.31 (Bankr. W.D. Mo. 2008).

"While those factors are helpful in some cases, they have not been expressly

adopted by the Eighth Circuit as part of the totality of circumstances test, and many of

the factors are often irrelevant when applied in a particular case."  In re Groves, 398

B.R. at 683.  Further, several of the factors listed above overlap with the first two prongs

of the totality of circumstances test outlined in Walker and Long and do not warrant

further discussion.  Id.

20

**B.  Analysis**

1.  Debtor's past, present, and reasonably reliable future financial resources

The undisputed facts show Bakken earned a Bachelor of Science degree in

Aeronautical Science in May 2005 and has been employed as a pilot since October

2004.  Before joining DHS, Bakken held the following positions:

a) Corporate Pilot/Co-pilot, Marvin Windows and Doors, Warroad, MN,
   February 2008 – August 2009;
b) Fire Patrol/Detection Pilot, Bear Aviation, Baudette, MN, April 2008 – July
   2008;
c) Pilot, Grafe Auction, Spring Valley, MN, June 2007 – February 2008;
d) Pilot/Customer Service Tech., Concepts and Designs, Owatonna, MN,
   September 2005 – October 2007; and
e) Pipeline Patrol Pilot/Mechanic, Gregg Flying Service, TX, October 2004 –
   July 2005.

In August 2009, DHS hired Bakken as an Air Interdiction Agent.  Since joining DHS,

Bakken received promotions and wage increases.  He was hired as a GS-11, Step 1,

earning $56,411.00 per year in August 2009 and progressed to a GS-13, Step 2,

earning $105,620.40 per year by September 2012.  According to Bakken's 2012 W-2

form, his gross income for 2012 was $100,874.69.  Bakken's 2012 Form 1040 reflects

"wages, salaries, tips, etc." for 2012 totaling $93,674.89 and adjusted gross income

totaling $88,875.00.  Bakken's "taxed social security and Medicare earnings" totaled

$89,356.00 in 2011, $72,808.00 in 2010, $49,083.00 in 2009, $37,542.00 in 2008,

$47,173.00 in 2007 and $55,857.00 in 2006.

Bakken received several performance awards during his employment with DHS.

He completed the service requirements for career tenure with the federal government

and qualifies for federal retirement benefits as a law enforcement officer.

Bakken listed $7,698.00 as his monthly gross wages and $3,240.78 as his total net monthly take home pay on Schedule I to his bankruptcy petition, which he filed on November 21, 2011.[2] Deductions from his monthly gross wages included the following:

|          |                              |
|----------|------------------------------|
| $873.73  | Payroll Taxes and Social Security |
| $95.19   | Retirement                   |
| $389.48  | TSP-FERS                     |
| $29.93   | FEGLI                        |
| $270.77  | FEHBA                        |
| $97.42   | Dental Plan                  |
| $32.73   | Vision Plan                  |
| $0.60    | Opt Fegli                    |
| $2,667.37| Child Support/Spousal Support |

Bakken maintains that he is currently near the maximum earning capacity in his industry. If he leaves law enforcement, Bakken believes his income will decrease.

At the summary judgment motion hearing, Bakken testified that his employment status with DHS might change. Specifically, Bakken worries that his career may not continue due to issues that have caused him to seek counseling. He is currently meeting with a psychologist and has been for approximately 14 weeks. Bakken estimated that there was a 90 percent chance his condition will eventually force him to leave his current employment.

---

[2] The income figures on Bakken's 2012 W-2 and 2012 Form 1040 suggest his gross income is slightly higher than the sum Bakken represented in his schedules. Multiplying $7,698 by 12 results in an annual income of $92,376. The gross income recorded on Bakken's 2012 W-2 was $100,874.69. According to Bakken's 2012 Form 1040, his "wages, salaries, tips, etc." for 2012 totaled $93,674.89. Bakken's means test analysis reflects a higher annual income as well. On Form B22A, the total annualized current monthly income Bakken recorded for section 707(b)(7) exclusion purposes was $99,899.88. More recent information suggests Bakken continues to benefit from salary increases. Effective September 9, 2012, Bakken earned a total salary of $105,620.40. Exh. 5, SF 50, PLNT000744. In their motion, Defendants relied on the figures Debtor recorded in Schedules I and J when arguing that Bakken has disposable income available to pay his student loan debt. By applying these numbers, Defendants used the income figures most favorable to Bakken. In analyzing the issues in the context of this Motion for Summary Judgment, the Court will do the same.

Bakken did not offer any documentation of his treatment or evidence of a diagnosis.  He did not offer evidence that DHS employment policies or practices would not permit him to continue his employment while seeking psychological counseling.  In fact, he offered no evidence to support his suspicion that there was a 90 percent chance he would be forced to leave his position with DHS.  To the contrary, he testified that DHS temporarily transferred him to Farmington, Minnesota, to allow him time to address family needs.  He also testified that he is motivated to regain custody of his children and understands that this effort will require financial resources. He maintains that DHS provides the highest salary in the industry, and thus appears motivated to continue to work.  His job history supports this conclusion.

Given his impressive employment history and earning capacity, speculation that he may be compelled to sacrifice his job is not sufficient to meet his burden of offering evidence sufficient to rebut the employment and compensation evidence offered by Defendants.  Accordingly, the Court finds that Bakken's unsupported speculation that he may lose his job because he is seeking psychological counseling, without more, is not sufficient to create a question of fact with regard to Bakken's employment or earning capacity.  Kneibert v. Thomson Newspapers, Michigan Inc., 129 F.3d 444, 455 (8th Cir. 1997) ("To survive a motion for summary judgment, a nonmovant must provide sufficient, probative, admissible evidence advancing specific facts which would permit a fact finder to rule in his favor as opposed to engaging in "mere speculation, conjecture, or fantasy."); Colonial Ins. Co. v. Spirco Envtl., Inc., 137 F.3d 560, 563 (8th Cir. 1998) ("The 'factual dispute' asserted by Appellants consists only of speculation, and is insufficient to avoid summary judgment."); Kiemele v. Soo Line R.R. Co., 93 F.3d 472,

23

474 (8th Cir. 1996) ("The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts, and where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

To the extent Bakken suggests that he may voluntarily resign from his job with DHS, the Court notes that Bakken has a duty to maximize his income.  Parker v. Gen. Revenue Corp. (In re Parker), 328 B.R. 548, 552-53 (B.A.P. 8th Cir. 2005);  Long v. Educ. Credit Mgmt. Corp. (In re Long), 292 B.R. 635, 638 (B.A.P. 8th Cir. 2003). "A debtor is not entitled to an undue hardship discharge of student loan debts when his current income is the result of self-imposed limitations, rather than lack of job skills[.]" Jesperson, 571 F.3d at 782; see also Sederlund v. Educ. Credit Mgmt. Corp. (In re Sederlund), 440 B.R. 168, 174-75 (B.A.P. 8th Cir. 2010) ("The evidence and testimony support the Bankruptcy Court's conclusion that the Debtor is entirely capable of obtaining full-time, gainful employment, and that she is voluntarily underemployed. Therefore, she failed to prove that she should be entitled to discharge her student loans.").

Bakken's current income is not less than the gross monthly income recorded on his bankruptcy schedules.  Debtor's work and salary history, together with his current employment, demonstrate that his reasonably reliable future financial resources include a gross monthly income of at least $7,698.

   2.  Reasonable living expenses of the debtor and his dependents

In analyzing the second prong of the totality of the circumstances, the Court considers Bakken's reasonable and necessary living expenses to determine whether

24

Bakken can both afford payments on his student loans and maintain a minimal standard of living.  In re Walker, 650 F.3d at 1234.  For an expense to be reasonable and necessary, it must be "modest and commensurate with the debtor's resources."  Jesperson, 571 F.3d at 780 (citation omitted).

Bakken included the following wage deductions on Schedule I:

|  |  |
|---|---|
| $873.73 | Payroll Taxes and Social Security |
| $95.19 | Retirement |
| $389.48 | TSP-FERS |
| $29.93 | FEGLI |
| $270.77 | FEHBA |
| $97.42 | Dental Plan |
| $32.73 | Vision Plan |
| $0.60 | Opt Fegli |
| $2,667.37 | Child Support/Spousal Support |

Both parties assumed, for the purpose of this motion, that these figures are accurate.  After reducing Bakken's gross wages, as reported on Schedule I, by these wage deductions, Bakken's net monthly take home pay is $3,240.78.

Bakken listed $3,226.76 in average monthly expenses on his Schedule J.  Since the date of his petition, Bakken reduced some of his scheduled expenses.  He sold his house in Northwood, North Dakota, and realized $2,977.44 in income from the sale.  Therefore, he is no longer required to make mortgage payments.  Because he no longer owns a home, he does not incur home maintenance expenses.  Bakken is no longer obligated to pay $100.00 per month to Teresa Baier, he has no pet expenses and he is not tithing at the current time.  These cost savings do not result in a dramatic increase in disposable income, however.  Bakken testified that since he petitioned for bankruptcy relief, he has incurred new expenses related to the care of his children, including visitation expense and reunification therapy and counseling fees.  In addition, Bakken

anticipates paying rent at a rate near the sum of his mortgage payment.  At the time of the hearing, Bakken paid only $100 per week in rent with no separate utilities expense, but he anticipated this expense would increase to $700.  Bakken did not clarify whether he would be required to pay $700 per week or per month.  He also did not advise the Court whether this new figure included utilities.  Giving Bakken the benefit of all reasonable inferences, the Court concludes that Bakken will pay $700 per month including utilities.[3]

Using the data Bakken included in his schedules and supplementing it with information from Bakken's deposition and hearing testimony, Bakken's expenses are $3,484.33 per month.

|  |  |  |  | Current Expense |
|---|---|---|---|---|
| 1. | Rent or home mortgage payment | | 789.43 | 700.00 |
| 2. | Utilities: | a.  Electricity and heating fuel | 365.00 | 0.00 |
| | | b.  Water and sewer | 30.00 | 0.00 |
| | | d.  Other Refuse Disposal | 40.00 | 0.00 |
| 3. | Home maintenance | | 95.00 | 0.00 |
| 4. | Food | | 320.00 | 320.00 |
| 5. | Clothing | | 50.00 | 50.00 |
| 6. | Laundry and dry cleaning | | 40.00 | 40.00 |
| 7. | Medical and dental expenses | | 50.00 | 50.00 |
| 8. | Transportation (not including car payments) | | 360.00 | 360.00 |
| 9. | Recreation, clubs and entertainment, newspapers, | | 25.00 | 25.00 |
| 10. | Charitable contributions | | 100.00 | 0.00 |
| 11. | Insurance | d.  Auto | 70.00 | 70.00 |
| 12. | Installment payments | a.  Auto | 464.00 | 456.00 |
| | b.  Other | Teresa Baier (By Court Order, Guardian Ad Litem Fees) | 100.00 | 0.00 |
| | | Kristi Bakken (By Court Order, Attorney's Fees) | 83.33 | 83.33 |
| 17. | | Personal Care and Hygiene | 20.00 | 245.00 | 20.00 |

[3] While it may be reasonable to conclude that Bakken's rent may double, it is not reasonable to conclude his rent would increase by 700 percent based on the context of Bakken's statements.  Since Bakken was not compelled to pay utilities at a rate of $100 per week, it is also reasonable to conclude that he will not be compelled to pay extra for utilities at a rate of $700 per month.

| | | | | | |
|---|---|---|---|---|---|
| | Other: | Hair Cuts | 20.00 | | 20.00 |
| | | Household supplies | 10.00 | | 10.00 |
| | | Pet Expenses | 15.00 | | 0.00 |
| | | Uninsured Medical Expenses For Non-Custodial Children | 180.00 | | 180.00 |
| | | PLUS | | | |
| | | Visitation Fees | | | 200.00 |
| | | Reunification Therapy Fees | | | 300.00 |
| | | Counseling for Children | | | 600.00 |
| 18. | AVERAGE MONTHLY EXPENSES | | | $3,226.76 | **$3,484.33** |

Deducting Bakken's current expenses from the average net monthly income recorded on his Schedule I, results in a deficiency of $-243.55 per month.[4]  Using the monthly expense figures from the Village Family Service Center Case Action Plan together with the visitation, reunification therapy and counseling fees of $1,100, results in an even larger deficiency.[5]

Defendants argue that Thrift Savings Plan contributions are not necessary and reasonable expenses for a debtor seeking discharge of his student loans.  Defendants claim Bakken would have an extra $567.16 per month in disposable income if he were to eliminate his seven percent monthly retirement contribution.  By adding $567.16 in income to the net monthly take home page and subtracting the figures in the chart

[4] In reaching the figures listed in the "current expense" column, the Court viewed the facts in a light most favorable to Bakken and gave him all reasonable inferences as required in the context of this summary judgment analysis.  Consequently, these calculations are provided for the sole purpose of deciding whether Bakken's testimony creates a question of fact regarding whether he has sufficient disposable income to pay his student loan debt and whether these debts create an undue hardship.

[5] Case Action Plan expenses of $3,025.91 + $1,100.00 in visitation, reunification therapy and counseling fees = $4,125.91 per month in expenses.  Subtracting the net monthly take home pay of $3,240.78 (which was based on a minimum gross wage of $7,698.00 less scheduled deductions) from this monthly expense total results in disposable income of -$885.13.

above, it appears that Bakken would have only $323.61 in disposable income to devote to student loan payments.  The undisputed evidence shows that the minimum monthly student loan payment Defendants will accept is $521.14, leaving a deficiency of roughly $200 per month.  Further, this monthly student loan payment figure was based on pre-litigation offers extended to Bakken.  While ED and ACPE extended this offer at the hearing, Sallie Mae would grant no such assurance.  Consequently, the student loan payment Bakken would be compelled to make is likely more than $521.14 per month.  Accordingly, even if this Court was persuaded by Defendants' argument regarding retirement contributions (which it will reserve for another day), Bakken's testimony has created a question of fact regarding whether the student loans are an undue hardship under section 523(a)(8).

3. Any other relevant facts and circumstances surrounding the particular bankruptcy case

Defendants assert Bakken has not made a good faith effort to minimize expenses.  To support this claim, Defendants assert that Bakken continues to purchase luxury items, contribute to retirement savings and donate to charity.  While Bakken does not dispute that he continues to contribute to TSP, he stopped contributing to his church and other charitable causes and denied spending money on luxury items.  He offered an explanation for acquiring a 2011 Subaru Outback and justified the need to upgrade his cell phone package.  He also testified that his disposable income is now devoted to regaining custody of his children.   His testimony is sufficient to raise a question of fact regarding whether he is making a good faith effort to minimize his expenses.

Defendants also argue that Bakken's current financial hardships are temporary.  They assert that, by February 2017, Bakken will have paid off his 2011 Subaru Outback,

resulting in an additional $456.00 in excess funds per month.  Bakken's obligation to provide his ex-wife spousal support expires not later than June 1, 2016, resulting in a savings to Bakken of an additional $400.00 per month.  In less than four years, his oldest child will reach the age of majority and his child support obligations will be reduced.   Defendants suggest Bakken will not have any child support obligations in 14 years.  Defendants maintain that, in the interim, Bakken may take advantage of a minimum of 35 months of economic deferments and forbearances on his Consolidation Loan.

In response to this argument, Bakken asserts that as his car gets older, he will have to pay maintenance and repair expenses that roughly equal his car payment.  He also asserts that he anticipates incurring expenses to obtain custody of his children. The Court received no evidence about the expenses necessary to obtain custody, the expenses Bakken will incur if he achieves success in this endeavor or the reduction in child support that may result.   Further, the Court received no evidence on the length of time Bakken will be compelled to pay for counseling, reunification therapy and visitation fees and whether these fees are considered in child support calculations.  Considering these issues in a light most favorable to Bakken, the Court finds that there are material fact questions necessitating trial of this case.

Finally, Defendants assert that Bakken refused his lenders' efforts to renegotiate repayment terms.  Bakken offered testimony and numerous documents that he maintains show his effort to make payments toward his debt and cooperate with Defendants.  The evidence he offered creates a question of material fact on this issue.

## V. CONCLUSION

The Court has considered all other arguments and concludes that, in viewing the evidence as a whole in a light most favorable to Bakken, he has offered evidence sufficient to create a material issue of fact regarding whether his student loans create an undue hardship under 11 U.S.C. § 523(a)(8).  Accordingly, Defendants' Motion for Summary Judgment is DENIED.

Dated:  January 27, 2014.

*Shon Hastings*

SHON HASTINGS, JUDGE
United States Bankruptcy Court