UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                            Bankruptcy No. 11-31048
                                                  Chapter 7
Daylon Bakken,

                    Debtor.
_____/

Daylon Bakken,

                    Plaintiff,

          vs.                                     Adversary No. 12-7038

Alaska Commission on Postsecondary
Education (ACPE), Sallie Mae and
U.S. Department of Education,

                    Defendants.
_____/

## MEMORANDUM AND ORDER

On September 24, 2012, Plaintiff/Debtor Daylon Bakken filed this adversary proceeding seeking a determination that his student loan debt owed to Defendants Navient Solutions, Inc., f/k/a Sallie Mae, United States Department of Education (USDE) and Alaska Commission on Postsecondary Education (ACPE) is dischargeable under 11 U.S.C. § 523(a)(8).  Navient, USDE and ACPE filed answers, denying that Debtor is entitled to the relief he requests.

After several extensions, trial was scheduled for October 28, 2014.  The parties filed a Joint Stipulation of Uncontested Facts (Doc. 85) and a Joint Motion for Trial on Written Briefs and on Joint Stipulation of Uncontested Facts (Doc. 86)

on October 20, 2014.   The Court granted the motion.   From the stipulated facts, the Court makes the following findings of fact and conclusions of law:

## I.   FINDINGS OF FACT

The Court adopts the uncontested facts as stipulated to by the parties and incorporates them by reference.   See Doc. 85.

## II.   CONCLUSIONS OF LAW

A.    Student Loan Dischargeability Standards

Section 523(a)(8) of the Bankruptcy Code provides that debts arising from certain educational loans or benefits may not be discharged unless "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."   11 U.S.C. § 523(a)(8).   Unlike many other debts, a debtor's obligation to pay a student loan debt remains until there has been an express determination that the loan is dischargeable.   Conway v. Nat'l Collegiate Trust (In re Conway), 495 B.R. 416, 419 (B.A.P. 8th Cir. 2013).   In other words, the exception from discharge under section 523(a)(8) is self-executing in that the discharge order will not include a student loan debt unless debtor affirmatively secures a hardship determination.   Id.

The debtor bears the burden of establishing undue hardship by a preponderance of the evidence.   Walker v. Sallie Mae Servicing Corp. (In re Walker), 650 F.3d 1227, 1230 (8th Cir. 2011).   "The burden is rigorous.   'Simply put, if the debtor's reasonable future financial resources will sufficiently cover

2

payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged.'" Educ. Credit Mgmt. Corp. v. Jesperson, 571 F.3d 775, 779 (8th Cir. 2009) (quoting Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 553 (8th Cir. 2003)).   In assessing whether a debtor has met his or her burden of proving undue hardship, courts in the Eighth Circuit apply a totality-of-circumstances test, under which they consider: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the reasonable living expenses of the debtor and her dependents; and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case."   In re Walker, 650 F.3d at 1230 (citing In re Long, 322 F.3d at 554).

B.    Analysis

1.    Debtor's past, present and reasonably reliable future financial resources

Debtor has worked in various capacities as a pilot since October 2004. Prior to his current employment, he held the following positions:[1]

| Job Title | Employer | Employment Dates |
|---|---|---|
| Pipeline Patrol Pilot/ Mechanic | Gregg Flying Service | October 2004-July 2005 |
| Pilot/Customer Service | Concepts and Designs | September 2005-October 2007 |

---

[1] Debtor's income for each of these positions was not included in the stipulated facts.

3

| Pilot | Grafe Auction | June 2007-February 2008 |
| Fire Patrol/Detection Pilot | Bear Aviation | April 2008-July 2008 |
| Corporate Co-Pilot | Marvin Windows And Doors | February 2008-August 2009 |

The Department of Homeland Security (DHS) hired Debtor as an Air Interdiction Agent in August 2009.   Since joining DHS, Debtor received a series of promotions and wage increases.   He was hired as a GS-11, Step 1, earning $56,411.00 per year, and progressed to a GS-13, Step 3, earning $110,189.00 per year by January 2014.

DHS awarded Debtor at least three performance-based cash awards: $500.00 in 2010, $500.00 in 2011, and $750.00 in 2012.   He completed the service requirements for career tenure with the federal government and qualifies for federal retirement benefits as a law enforcement officer.

According to Debtor's 2012 W-2 form, his gross income for 2012 was $100,874.69.   His IRS Form 1040 reflects "wages, salaries, tips, etc." for 2012 totaling $93,675.00 and adjusted gross income totaling $88,875.00.   Debtor's 2012 tax refund was $9,483.00.

According to his 2013 W-2 form, Debtor's gross income for 2013 was $104,016.26.   Debtor's 2013 IRS Form 1040 reflects "wages, salaries, tips, etc."

4

totaling $96,579.00 and adjusted gross income totaling $88,235.00. Debtor's 2013 tax refund was $6,007.00.

Debtor's "taxed social security and Medicare earnings" totaled $49,083.00 in 2009, $72,808.00 in 2010, $89,356.00 in 2011, $100,874.00 in 2012 and $104,016.00 in 2013.

As of July 2014, Debtor was on pace to gross $124,212.14 in 2014, which equals $4,777.39 gross per pay period or $10,351.01 gross per month. These totals include Debtor's annual salary plus night differentials and availability pay. As of July 2014, Debtor was on pace to net $46,302.72 in 2014, which equals $1,780.87 per pay period or $3,858.56 per month.

Deductions from Debtor's biweekly paychecks in July 2014 included:

a. Payroll Taxes and Social Security $   497.45
b. Retirement                        $    54.91
c. TSP-FERS                          $   295.68
d. FEGLI                             $    16.95
e. FEHBA                             $   142.75
f. Dental Plan                       $    45.79
g. Vision Plan                       $    14.04
h. Opt FEGLI                         $     0.29
i. Child Support/Spousal Support     $1,484.62
j. Life Insurance Coverage           $     1.00
k. TSP Loan Repay                    $   172.72

The $1,484.62 deduction for child/spousal support as of July 2014, however, is not the most up-to-date figure. After Debtor obtained primary physical placement of his oldest son, his employer received a court notice directing it to adjust Debtor's child/spousal support withholdings starting with Pay Period 17, which began

5

August 24, 2014.   For Pay Period 18, Debtor's employer deducted $1,215.38 from his paycheck for child/spousal support.   Debtor points out that the parties stipulated that they are unaware of a court order modifying the existing child support or alimony order.   See 85, ¶ 46.   The Court finds the joint stipulation, which provided that Debtor's employer received a court notice directing it to adjust his withholding and that the deduction was in fact reduced for Pay Period 18 sufficient to reliably establish the change in the amount of the deduction.   With this adjustment to Debtor's withholding for child/spousal support, his net income increases by $269.24 per pay period,[2] which increases Debtor's projected net pay for the remainder of 2014 to $2,050.11 per pay period[3] or $4,441.91 per month.[4]

Debtor argues that, because his income has increased in recent years, it is likely that his child support obligation will increase in the future.   There are no stipulated facts to support this conclusion, however, and the Court may not speculate when determining net income and reasonable and necessary living expenses.   See In re Walker, 650 B.R. at 1233.

Stipulated facts also show that Debtor received large federal tax refunds the past two years, including $9,483.00 in 2012 and $6,007.00 in 2013.   Therefore, resources available to Debtor are substantially higher than the previous calculations suggest – possibly $500 to $790 per month higher than reflected in

---

[2]  $1,484.62 − 1,215.38 = $269.24.
[3]  $1,780.87 + 269.24 = $2,050.11
[4]  $2,050.11 x 26 pay periods annually / 12 months = $4,441.91.

6

the net income figure.[5]   By including the lower, most recent tax refund ($500.58 per month) in Debtor's projected income, his net income more accurately totals $4,942.49 per month for the remainder of 2014.   See Walker v. Sallie Mae Servicing Corp. (In re Walker), 427 B.R. 473, 485 (B.A.P. 8th Cir. 2010), aff'd, 650 F.3d at 1232 (finding no error in using debtors' actual tax liabilities to determine the amount of the monthly obligation and stating that it is a particularly appropriate method where the evidence suggests that the debtor is under or over withholding); see also Brown v. Am. Educ. Serv. Inc. (In re Brown), 378 B.R. 623, 627 (Bankr. W.D. Mo. 2007) (averaging the past two years' income tax refunds to determine the amount to increase debtor's net monthly income).

With regard to Debtor's other financial resources, Debtor also invests in a retirement plan through his employment with the federal government called a Thrift Savings Plan (TSP).[6]   He contributes $640.64 per month or $7,687.68 per year to this plan.   As discussed in more detail below, this contribution, like Debtor's decision to have more tax withheld than necessary, is a purposeful decision to reduce the disposable income available for monthly expenses.

---

5  Debtor's 2013 refund totaled $6,007.00, providing him additional resources of $500.58/month ($6,007.00/12=$500.58). Debtor's 2012 refund totaled $9,483.00, providing him additional resources of $790.25/month ($9,483.00/12=$790.25).
6  Debtor borrowed $21,181.00 from his TSP on May 18, 2014 at a 2.25% annual interest rate.   He is obligated to make 130 payments of $172.72 over five years to repay the loan.   As of June 30, 2014, Debtor had "$26,706.06 remaining vested in his TSP account."   Doc. 85 ¶ 41.

7

In addition to his biweekly contributions to TSP, Debtor arranged for $172.72 to be deducted from each of his paychecks to repay a TSP loan he borrowed in May 2014.   On July 31, 2014, Debtor had $6,736.67 in his Citizens State Bank savings account, which includes funds remaining from the TSP loan.

Debtor is 37 years old.   He has no illness or medical, physical or mental disability that affects his ability to repay his student loans.   He is not under any medical or physical limitations with respect to his work status or driving privileges.

Debtor's work and salary history, together with his current employment and health, demonstrate that his reasonably reliable future resources will include a gross monthly income of at least $10,351.01.   Further, Debtor concedes in his trial brief, "There [are] no facts at this time that suggest that Debtor will not have reasonably reliable future financial resources in the future."   Doc. 89, at 4.

Debtor's circumstances and financial situation are similar to those of the debtor in Collins v. Educ. Credit Mgmt. Corp. (In re Collins), 376 B.R. 708 (Bankr. D. Minn. 2007).   In that case, the debtor was a 33-year-old chiropractor. In re Collins, 376 B.R. at 711.   In denying the debtor a discharge of his student loan obligations, the court concluded:

> This case presents precisely the sort of debt the discharge of which § 523(a)(8) was designed to preclude.   Collins is young, healthy, highly educated, and accomplished and experienced in a successful, growing and lucrative field.   He has demonstrated a consistent ability to earn a large income.   He has worked continuously as a doctor of chiropractic since he entered the work force as such, and there is no reason to suspect he will not maintain a

steady and increasing practice going forward and generate a rising income[.]

Id. at 718.   Similarly, Debtor is young, healthy and accomplished in his field, and he has demonstrated a consistent ability to earn a large income.

Debtor's significant current income and future prospects weigh against discharge of his student loan obligations.

2.    Reasonable and necessary living expenses

In analyzing the second prong of the totality-of-circumstances test, the Court considers Debtor's reasonable and necessary living expenses to determine whether he can afford payments on his student loans and maintain a minimal standard of living.   In re Walker, 650 at 1234.   "[A] minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment."   Nielsen v. ACS, Inc. (In re Nielsen), 473 B.R. 755, 760 (B.A.P. 8th Cir. 2012) (quotation omitted).   For an expense to be reasonable and necessary, it must be "modest and commensurate with the debtor's resources."   Jesperson, 571 F.3d at 780 (quotation omitted).

As discussed above, Debtor's projected net monthly income for the remainder of 2014 is $4,942.49 (including $500.58/month reflecting his 2013 tax refund, but not including any of the funds he voluntarily contributes to his retirement plan).

Debtor asserts that his current expenses total $3,762.29. Assuming for the sake of discussion that all of his claimed expenses are reasonable, necessary and supported by stipulated facts, Debtor has sufficient disposable income ($1,162.20) [7] to repay his student loan debts. Debtor asserts that "[t]he undisputed evidence shows that the minimum monthly student loan payment that Debtor would be required to pay would be $695.77 per month." Doc. 89, at 6. This figure includes the $273.24 monthly payment he made to ACPE before filing for bankruptcy rather than the repayment offer ACPE extended to Debtor on August 18, 2014. (ACPE's offer contemplates $145.00 monthly payments for 119 months.) While declining to acknowledge ACPE's offer, Debtor nevertheless applies the lowest payment option available from USDE ($138.00 per month). There is no evidence suggesting Debtor elected this option from USDE or the repayment offers made by ACPE and Navient. Rather, the stipulated facts reflect that following monthly payment plans:

|  | Prebankruptcy payment plans | Offers available to Debtor |
|---|---|---|
| USDE | $386.90 | $138.00 or higher |
| ACPE | $273.24 | $145.00 |
| Navient | $284.25 | $284.53 |
| Total | $944.39 | $567.53 |

---

[7] $4,924.49 − 3,762.29 = $1,162.20.

Accordingly, whether the prebankruptcy payments of $944.39 per month or Debtor's suggestion that his student loan payments total $695.77 per month are applied, Debtor's monthly disposable income of not less than $1,162.20 is sufficient to pay his student loan debts.   Electing to accept the offers extended by Defendants would simply allow more flexibility in his monthly budget.

The Court does not, however, find all of Debtor's claimed expenses to be reasonable, necessary and supported by stipulated facts.   Debtor claims his medical and dental expenses are currently $117.42, but the stipulated facts state: "As of October 17, 2014, Bakken is paying $55 per month in prescription drug expenses for himself, and $12.42 per month in prescription drug expenses for his son."   Doc. 85, ¶ 71.   In his responsive brief, Debtor argues that his medical expenses were originally listed on Schedule J at $50.00 per month and were never disputed, and that the $67.42 reflects his additional medical expenses.   The stipulated facts do not make this clear, however, and only substantiate a total of $67.42 per month in medical and dental expenses.   See In re Walker, 650 F.3d at 1230 (debtor bears the burden of establishing undue hardship by a preponderance of the evidence).   His monthly expenses must therefore be reduced by $50.00 per month.

The facts also do not support Debtor's claimed monthly expense of $56.25 for reunification therapy.   Debtor incurred reunification therapy expenses related to his oldest son which totaled $675.00 for visits between October 8, 2013, and

11

September 16, 2014. Debtor's oldest son now lives with him, and there are no facts in evidence suggesting that the reunification therapy expenses are ongoing or will recur. <u>See id.</u> Debtor's monthly expenses must therefore be reduced by $56.25 per month.

Taking these additional reductions into account, Debtor's average monthly expenses total $3,656.04.[8] Therefore, Debtor has not less than $1,286.45[9] in disposable income to pay his student loans. The circumstances under this prong weigh against a determination that payment of his student loans constitutes an undue hardship.

3.     Other relevant facts and circumstances

The third prong of the totality-of-the-circumstances test involves consideration of any other relevant fact or circumstance surrounding the bankruptcy case.

Bankruptcy courts in the Eighth Circuit have considered a number of factors in analyzing the third prong of the totality-of-circumstances inquiry, including:

(1)    total present and future incapacity to pay debts for reasons not within the control of the debtor;

(2)    whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment;

(3)    whether the hardship will be long-term;

---

[8]  $3,762.29 – 106.25 = $3,656.04.
[9]  $4,942.49 – 3,656.04 = $1,286.45.

(4)    whether the debtor has made payments on the student loan;

(5)    whether there is permanent or long-term disability of the debtor;

(6)    the ability of the debtor to obtain gainful employment in the area of study;

(7)    whether the debtor has made a good faith effort to maximize income and minimize expenses;

(8)    whether the dominant purpose of the bankruptcy petition was to discharge the student loans; and

(9)    the ratio of student loan debt to total indebtedness.

Hangsleben v. U.S. Dep't of Educ. (In re Hangsleben), Adv. No. 10-7018, 2011 WL 2413340, at *6 (Bankr. D.N.D. June 10, 2011) (citations omitted); Marie v. Citibank NA (In re Groves), 398 B.R. 673, 683 n.31 (Bankr. W.D. Mo. 2008).

"While those factors are helpful in some cases, they have not been expressly adopted by the Eighth Circuit as part of the totality of circumstances test, and many of the factors are often irrelevant when applied in a particular case."   In re Groves, 398 B.R. at 683.   Further, several of the factors listed above overlap with the first two prongs of the totality-of-circumstances test outlined in In re Walker and In re Long and do not warrant further discussion.   Id.   Nevertheless, since Debtor addressed each of these factors, the Court will do so as well.

a. Total present and future incapacity to pay debts for reasons not within the control of the debtor.

Debtor argues that he is involved in contentious divorce litigation that has resulted in many uncertainties for him.   He asserts that he has no control over

13

court decisions that will affect him in the future, child support obligations that will be subject to increases and decreases and legal expenses that will continue.

The Court is not persuaded that this factor weighs in Debtor's favor. As discussed above, Debtor has the present capacity to pay his debts, and he has reasonably reliable future resources to pay them in the future. Further, "budget constraints which are *beyond the debtor's control* . . . usually result from physical or mental disability of the debtor or the debtor's dependents." Cline v. Ill. Student Loan Assistance Ass'n (In re Cline), 248 B.R. 347, 355 (B.A.P. 8th Cir. 2000); see Robbins v. Educ. Credit Mgmt. Corp. (In re Robbins), 371 B.R. 372, 380 (Bankr. E.D. Ark. 2007) (debtor's mental condition was beyond his control). Here, there is no evidence to suggest that Debtor or any of his dependents suffer from any physical or mental disability. Accordingly, Debtor has not met his burden of showing that this factor weighs in favor of loan discharge under the totality of the circumstances test.

> b. Whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment.

Debtor asserts that this factor is irrelevant in this case. Specifically, he claims that he lacks the current income to pay the immediate demand of Defendants and that the deferment offered by USDE does not give him the ability to pay his student loan obligations.

14

As already discussed, Debtor earns sufficient income to pay the immediate demands of Defendants, even without the deferment offered by USDE.   Further, the Court finds that this factor is relevant in this case given the numerous options made available to Debtor and his unwillingness to accept any of them.   See Jesperson, 571 F.3d at 781 (student loans should not be discharged when a debtor has the ability to make payments under the various opportunities available) (citation omitted).   Each of the Defendants offered Debtor repayment options that would lower his monthly payments and/or provide more favorable repayment terms, thereby easing his budget concerns.

As of July 14, 2014, Debtor owes USDE $44,668.16 in student loan debt. Debtor is eligible for a minimum of 35 months of economic deferments and forbearance on his consolidation loan.   He qualifies for and has participated in the Direct Loans' Public Service Loan Forgiveness (PSLF) program with USDE.   He qualifies for forgiveness of the balance remaining on his consolidation loan after 120 on-time, full, scheduled monthly payments.   The 120 payments must be made under the Income Contingent Repayment Plan, Standard Repayment Plan with a ten-year repayment period or any other Direct Loan Program Repayment Plan, provided the payments are at least equal to the monthly payment required under the Standard Repayment Plan with a ten-year repayment period.   To date, Debtor has made 24 payments that qualify toward PSLF.

15

Debtor qualifies for six different repayment plans from USDE. The option with the lowest monthly payment requires a monthly payment of only $138.00. Since filing his bankruptcy petition, Debtor has declined to reenroll in any of USDE's repayment plans.

As for the debt to ACPE, as of July 14, 2014, Debtor owed ACPE $34,498.25.   On December 5, 2012, ACPE offered to reduce the amount Debtor needed to repay to $15,625, in monthly installments of $125.00 for 125 months, with no interest accrual.   Upon payment of the $15,625.00, ACPE agreed to write off any remaining unpaid portion of the student loan debt.   There is no evidence that Debtor accepted this offer.

On August 18, 2014, ACPE presented another repayment plan to Debtor. ACPE offered to reduce the amount Debtor needed to repay to $17,289.50, in monthly installments of $145.00 for 119 months, with a final payment of $34.50 in the 120th month, with no interest accrual.   Upon payment of the $17,289.50, ACPE agreed to write off any remaining unpaid portion of the student loan debt. Again, there is no evidence that Debtor accepted this offer.

As of October 11, 2012, Debtor owed Navient $64,206.92.   On November 24, 2008, Debtor entered into a four-year interest-only repayment plan with Navient requiring monthly payments of $284.25.   At the time Debtor filed his complaint in this adversary proceeding, Debtor's monthly payments to Navient totaled $284.25.   On January 22, 2013, Navient offered to reduce Debtor's

16

principal balance to $60,000.00, reduce and fix the interest rate on his loans at three percent and extend a 25-year self-amortizing repayment term resulting in monthly payments due of $284.53.   Again, there is no evidence that Debtor accepted this offer.

Although Debtor claims he does not currently have income to pay Defendants, the Court has already concluded otherwise.   The repayment options made available to him would offer even more budget flexibility.   Debtor's ability to make the student loan payments based on the opportunities Defendants offered weighs against discharge of Debtor's student loan debts.

> c. Whether the hardship will be long term.

Debtor argues that his hardship is likely to be long term because of the contentious divorce litigation that will result in continued legal expenses.   He further claims that his child support will continue and the amounts are subject to increases and decreases.

Again, the Court disagrees.   The stipulated facts show that Debtor's financial situation is likely to improve significantly over the next few years. Debtor's obligation to pay his ex-wife $400.00 in monthly spousal support expires no later than June 1, 2016.   In less than three years, Debtor's oldest child will reach the age of majority.   Debtor's child support obligation will reduce as each of his other five children reach the age of majority.   Lastly, Debtor's $469.29 monthly

vehicle payment will cease in approximately April 2020. This factor weighs against discharge of Debtor's student loan debts.

        d.  Whether the debtor has made payments on the student loan.

Whether Debtor has made any payments on the ACPE and Navient loans is not in the stipulated facts. Debtor has not defaulted on his USDE consolidation loan, and the Court infers that he has made all payments on this loan. This factor weighs in favor of discharge of the student loan obligations.

        e.  Whether there is permanent or long-term disability of the debtor.

Although Debtor claims this factor is not applicable, the absence of a permanent or long-term disability weighs against discharge of Debtor's student loan obligations.

        f.  The ability of the debtor to obtain gainful employment in the area of study.

Debtor does not dispute that he obtained employment in his area of study.

        g.  Whether the debtor has made a good faith effort to maximize income and minimize expenses.

Debtor claims that none of his expenses are unreasonable and that his expenses are arguably even understated. Specifically, he claims the food and clothing expenses listed on Schedule J when compared to expenses listed in paragraph 84 of the stipulation are unrealistic. Debtor's argument is not persuasive. While it appears that Debtor may occasionally spend more on food, his estimate of monthly food expense was included on Schedule J and the parties

stipulated to this expense for trial purposes. The parties did not stipulate to a change in the amount of his food and clothing expenses. These are the facts to which the parties, and this Court, are bound.

In the previous section addressing Debtor's reasonable and necessary living expenses, the Court did not need to reach the issue of the reasonableness and necessity of Debtor's individual expenses because, even if they were all reasonable and necessary, Debtor has sufficient resources to pay his expenses and his student loan obligations without undue hardship. Some of Debtor's claimed expenses merit brief discussion here, however.

Until April 2014, Debtor paid $456.00 per month toward a loan secured by a 2011 Subaru Outback. Had Debtor kept the car and made timely payments, he would have paid it off in approximately February 2017. On February 27, 2014, however, Debtor traded in his 2011 Subaru Outback and financed the purchase of a new 2014 Subaru Outback. The total price for the 2014 vehicle was $35,741.29. Debtor is obligated to make 72 monthly payment of $463.29 beginning April 14, 2014. Debtor will pay off this loan in approximately 2020.

Debtor asserts that the fact that he purchased a vehicle the year he filed for bankruptcy "in no way shows that he failed to make a good faith effort to minimize his expenses." Doc. 91, at 3. His justification for the new vehicle is that his other five children live in Wisconsin, requiring him to incur significant wear and tear on a vehicle. The Court is not persuaded. The parties did not stipulate to the number

19

of miles on Debtor's former vehicle, but it was only three years old.   If Debtor had not upgraded his vehicle, he would have paid off his car loan in less than two and a half years.   Debtor has not shown that his new vehicle purchase was necessary and the purchase shows a lack of effort to minimize expenses.

Next, the parties stipulated to a list of consumer goods and services Debtor purchased between August 2012 and July 2014.   Defendants assert these expenses represent "extravagant consumer spending."   Doc. 90, at 15.   Despite Defendants' characterization, the Court finds that most of the listed purchases are reasonable, including expenses for groceries, household supplies, clothing and attorney fees.   A few purchases merit comment, though, because they are not necessary or reasonable under the circumstances of this case.[10]   These include scuba diving class ($240.00), scuba diving equipment ($160.00) and a hotel charge for a scuba diving trip ($106.13); candles ($62.33); dinner for two with wine ($121.65); scuba recertification ($60.00); Cirque de Soleil tickets ($304.00); parts for a roommate's vehicle ($172.43); parts for a former roommate's vehicle ($174.62); a motorcycle ($1,500.00); and motorcycle lessons ($100.00).   These expenditures further demonstrate a lack of a good faith effort to minimize expenses.

---

[10]  Even Debtor acknowledges that some of his expenses are frivolous, stating, "*For the most part,* theses [*sic*] expenses reasonable, modest and commensurate with the debtor's resources." (Emphasis added). Doc. 91, at 4.

Another circumstance relevant to the question of whether Debtor has made a good faith effort to minimize his expenses is his monthly retirement contributions. Between August 2011 and July 2014, Debtor contributed seven percent of his income to his Thrift Savings Plan (TSP).   As of July 2014, this equaled $295.68 per two-week pay period, $640.64 per month, and $7,687.67 per year.   Although saving for retirement is generally wise and commendable outside the bankruptcy context, many bankruptcy courts have found that saving for retirement to the detriment of creditors is incompatible with the undue hardship standard applicable to the discharge of student loans.   See, e.g., Educ. Credit Mgmt. Corp. v. Young, 376 B.R. 795, 799 (E.D.Tex. 2007) (finding monthly $220.56 retirement contribution demonstrated a failure to minimize expenses); see also Gesualdi v. Educ. Credit Mgmt. Corp. (In re Gesualdi), 505 B.R. 330, 341 (Bankr. S.D. Fla. 2013) (finding monthly $152.60 retirement contribution indicative of insufficient effort to minimize expenses); Perkins v. Penn. Higher Educ. Assistance Agency, 318 B.R. 300, 308 (Bankr. M.D.N.C. 2004); (finding monthly $800.00 retirement contributions demonstrate a failure to minimize expenses); (Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner), 309 B.R. 405, 417 (Bankr. E.D.N.Y. 2004) (characterizing monthly 401(k) contributions as among debtor's "luxuries" that demonstrated a failure to minimize expenses); Shirzadi v. U.S.A. Grp. Loan Servs. (In re Shirzadi), 269 B.R. 664 (Bankr. S.D. Ind. 2001) (finding failure to prove good

faith effort to minimize expenses where debtor contributed a biweekly total of $200.00 to a retirement account and education fund for her children).

While the Court is not convinced that retirement contributions, without more, demonstrate a failure to minimize expenses in student loan cases, Debtor's monthly investment of $640.64 gives the Court pause.   This contribution equates to more than the total sum of student loan payments Debtor would be required to pay if he had accepted the lenders' payment plan offers ($567.53).   He made no effort to reduce his contribution in light of the student loan payments and other expenses.   To the contrary, he borrowed money against his TSP savings, resulting in an additional $172.72 payroll deduction.   Debtor's decision to maintain these contributions together with his decision to purchase a new car and a motorcycle and spend money on numerous unnecessary expenses shows a lack of good faith effort to minimize his expenses.

h. Whether the dominant purpose of the bankruptcy petition was to discharge the student loans and the ratio of student loan debt to total indebtedness.

Debtor sought discharge of his student loans six months after his discharge. Schedule E of Debtor's bankruptcy schedules list $20,200.00 in unsecured priority claims for court-ordered reimbursement of his ex-wife's attorney fees.   Schedule F lists $165,665.68 in unsecured nonpriority claims which include $129,970.00 in student loan debt.   The student loan debt represents 78.45 percent of Debtor's unsecured nonpriority debt.   While it is apparent that Debtor's student loan debt

22

represents a significant percentage of unsecured debt, the Court is not convinced that this fact, standing alone, shows a lack of good faith.   There is no evidence that Debtor borrowed student loan money with the intent to seek discharge later. There is no evidence that Debtor failed to make a good faith effort to pay the debts before he petitioned for bankruptcy relief.   See Walker v. Sallie Mae Servicing Corp. (In re Walker), 406 B.R. 840 (Bankr. D. Minn. 2009).   The Court finds that this factor neither weighs for nor against discharge of the student loans at issue in this case.

In summary, when considering all the relevant stipulated facts, Debtor has not met his burden of proving that his student loan debt imposes an undue hardship on Debtor and his dependents.   Rather, the totality of circumstances show that Debtor's reasonably reliable income and expected future resources are sufficient to pay his reasonable living expenses with sufficient disposable income left to pay his student loan debts.   When considered together, all other relevant factors weigh against discharge as well.

The Court has considered all other arguments and deems them to be without merit.

For these reasons, the Court finds that repayment of Debtor's student loan indebtedness to Defendants Alaska Commission on Postsecondary Education, Navient Solutions, Inc., f/k/a Sallie Mae and U.S. Department of Education does not impose an undue hardship on Debtor and his dependents pursuant to 11 U.S.C. § 523(a)(8). These debts are not dischargeable. Plaintiff's Complaint is DISMISSED with prejudice.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this 23rd day of January, 2015.

**SHON HASTINGS, JUDGE**
**UNITED STATES BANKRUPTCY COURT**